**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

ASHDEN NEWELL,

    Plaintiff,

v.                                                                          Case No. 24-1224

THE CARDIOVASCULAR CLINIC
OF WEST TENNESSEE, P.C. and
ADEYINKA AGBETOYIN, M.D.,
                                                                          **JURY DEMANDED**

    Defendants.

**COMPLAINT**

Comes now Plaintiff Ashden Newell and brings this action against Defendants The Cardiovascular Clinic of West Tennessee, P.C. ("CCWT") and Adeyinka Agbetoyin, M.D. ("Dr. Agbetoyin') for failure to comply with the Providing Urgent Maternal Protections Act ("PUMP Act") as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 218d(a)(1), and retaliation in violation of the FLSA, 29 U.S.C. § 215.  In support, Plaintiff would state as follows:

## I. JURISDICTION

1.      This Court has original jurisdiction to hear this Complaint and to adjudicate the claims stated herein under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

## II. STATEMENT OF FACTS

### A. Parties

2.      Plaintiff Ashden Newell is an adult citizen of the State of Tennessee, residing in Madison County, Tennessee.

3.      Defendant CCWT is a for profit, professional corporation formed and organized

under Tennessee state law and currently conducting business as a clinic for the treatment of cardiac and vascular conditions located at 2968 North Highland Ave., Jackson, TN 38305.

4.      Defendant Dr. Adeyinka "Adey" Agbetoyin is the owner and physician practicing at Defendant CCWT.  As owner, Dr. Agbetoyin makes all management decisions on behalf of CCWT including decisions on scheduling, hiring, discipline, and firing employees.

5.      At all relevant times herein, Defendants were the "employer" of Newell within the meaning of the FLSA, 29 U.S.C. § 203(d).

6.      Defendant CCWT is and, at all times hereinafter mentioned, was engaged in related activities performed through unified operation or common control for a common business purpose, and is and, at all times hereinafter mentioned, was an enterprise within the meaning of 29 U.S.C. § 203(r).

7.      Defendant CCWT is and, at all times hereinafter mentioned, was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A) in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise had an annual gross volume of sales made or business done of not less than $500,000.  Specifically, Defendant CCWT earns in excess of $500,000 annually.

### B. Factual Allegations

8.      Plaintiff Newell started working for CCWT as a sonographer on May 1, 2023.

9.      On or around May 13, 2023, Newell learned she was pregnant with her first child.

10.     Newell informed Dr. Agbetoyin that she was pregnant on or around May 18, 2023

and continued to work until Friday, January 12, 2024. Newell's baby was born on Monday, January 15, 2024.

11.     Newell was off work and on maternity leave until April 2024.

12.     Newell planned on returning to work on Monday, April 8, 2024.

13.     On March 29, 2024, in anticipation of her return to work, Newell contacted the office manager, Abiodun "Abby" Agbetoyin ("Mrs. Agbetoyin") via text message and informed her that she was still breastfeeding her baby and that she needed two breaks to pump breastmilk at 9:00 a.m. and 3:00 p.m., in addition to her lunch break, during which she also planned to pump (i.e., 3 breaks total to pump).  Mrs. Agbetoyin never responded.

14.     On April 4, 2024, Dr. Agbetoyin then contacted Newell via text message indicating that he would need to meet with her before she returned to work and that once the meeting had been satisfactorily concluded, he would set a time for her to start back at work.

15.     Dr. Agbetoyin delayed Newell's return to work by one week, and Newell did not receive any pay for the week of April 8, 2024.

16.     Dr. Agbetoyin and Newell met on April 11, 2024, to discuss her return to work. During this meeting, Newell again stated that she was still breastfeeding her baby and that she would need time to take pump breaks.

17.     Newell returned to work on April 15, 2024.  Upon her return to work, Newell learned that her schedule was not blocked off during the times in which she needed to pump.

18.     Defendant frequently double-booked patients on Newell's schedule and refused to block her schedule during the times she needed to pump.  As a result, Newell was often forced to take pumping breaks later than needed, to take shorter breaks than she needed, or to skip pumping

3

breaks altogether.

19.    Defendant's failure to accommodate Newell resulted in physical and emotional distress.  Newell experienced painful engorgement and a decrease in her milk supply, in addition to the daily stress, anxiety, and anguish about whether she would be able to feed her baby while at work.

20.    On May 22, 2024, Dr. Agbetoyin sent a text message to Newell, Mrs. Agbetoyin, and coworkers Jenna Vance and Lakeisha Yarbrough stating that they needed to discuss issues related to Newell's "frequent breaks."

21.    On May 23, 2024, Mrs. Agbetoyin, Ms. Yarbrough, and Newell met in Mrs. Agbetoyin's office.  During this meeting, Newell explained that she was having an issue taking adequate breaks to pump and that she was not receiving sufficient time to pump.

22.    Newell explained that her inability to take breaks at the frequency she needed was hurting her milk supply and that CCWT is required to give reasonable break time to express breastmilk under the law.

23.    In response, Mrs. Agbetoyin stated that CCWT was not required to block the schedule, made negative comments about the length and frequency of the breaks Newell needed, encouraged Newell to work on her laptop while taking a break to pump, and suggested Newell only take a break to pump during her lunch break.

24.    Newell explained that she can't get enough milk to feed her baby if she pumps one time in 8 hours and that CCWT's actions were hurting her milk supply.

25.    Ms. Yarbrough stated that Newell should try "training her body to pump when you first get here from 7:30-8."

4

26. Newell complained that CCWT's actions were illegal.

27. Dr. Agbetoyin interrupted the meeting and stated, "OK, bring the lawyer, let's hear from her."

28. Dr. Agbetoyin also told Newell to "do [her] work" like she's "supposed to, or get out."

29. Dr. Agbetoyin then stated, "The law referenced does not apply to us," presumably referencing the PUMP Act.

30. At the conclusion of the meeting, Dr. Agbetoyin proceeded to terminate Newell, stating, "You're fired, f*ck off, get out."

31. As a result of the foregoing, Newell experienced pain, anguish, anxiety, hardship, humiliation, and emotional distress.

### III. CAUSES OF ACTION

#### Count 1: Failure to Provide Reasonable Break Time Under the FLSA/PUMP Act

32. Plaintiff incorporates and realleges each and every factual allegation contained in the preceding paragraphs as if fully set forth herein.

33. The PUMP Act requires that employers provide a reasonable break time for an employee to express breast milk for such employee's nursing child for 1 year after the child's birth each time such employee has need to express the milk. 29 U.S.C. § 218d.

34. Defendants refused to allow Newell sufficient reasonable break time to express milk for her infant child in violation of the FLSA/PUMP Act, 29 U.S.C. § 218d.

35. As a result of Defendants' failure to provide reasonable break time, Newell's milk production for her infant child was significantly reduced.

## Count 2: Retaliation Under the FLSA/PUMP Act

36.     Plaintiff incorporates and realleges each and every factual allegation contained in the preceding paragraphs as if fully set forth herein.

37.     Defendants delayed Newell's return to work by one week without pay after she requested a lactation accommodation to take breaks to pump breastmilk at work.

38.     After returning to work, Defendants terminated Newell after and because she requested an accommodation to pump at work, made a protected complaint about CCWT's failure to comply with the PUMP Act, and referenced potential legal action under the PUMP Act.

39.     Retaliation is unlawful under the FLSA/PUMP Act.  Here, as set forth above, Defendants have unlawfully retaliated against Plaintiff for engaging in protected activity and asserting her federally protected rights under the FLSA/PUMP Act.

## IV. DAMAGES

40.     As a direct result of Defendants' unlawful actions, Plaintiff has suffered non-economic harm in the form of pain, anguish, anxiety, hardship, humiliation, and emotional distress.

41.     Additionally, as a direct result of Defendants' unlawful actions, Plaintiff has suffered economic harm in the form of lost wages and benefits.

42.     Further, the unlawful actions of Defendants complained of above were intentional, malicious, and made with reckless disregard for the federally protected rights of Plaintiff.

## V. RELIEF REQUESTED

WHEREFORE, Plaintiff prays that the Court cause service to be issued upon Defendants. Plaintiff further demands a jury to hear this cause, and upon a hearing thereon, prays that the Court:

A.  Award Plaintiff back pay, lost benefits, and other pecuniary losses proximately caused by Defendants' unlawful conduct;

B.  Award an equal amount of wages lost as liquidated damages;

C.  Award Plaintiff compensatory damages against Defendants in an amount to be determined by the jury;

D.  Award Plaintiff punitive damages against Defendants in an amount to be determined by the jury;

E.  Award Plaintiff all costs, disbursements, pre-judgment interest, post-judgment interest, expert witness fees, and reasonable attorneys' fees allowed under actions brought pursuant to the FLSA/PUMP Act; and,

F.  Such further relief as is deemed just and proper.


Respectfully submitted,


/s/Janelle C. Osowski
Janelle C. Osowski – TN Bar #31359
Bryce W. Ashby – TN Bar #26179
DONATI LAW, PLLC
1545 Union Avenue
Memphis, TN 38104
Telephone: 901/278-1004
Fax: 901/278-3111
Email: janelle@donatilaw.com
        bryce@donatilaw.com

7