UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

**ASHDEN NEWELL,**

    **Plaintiff,**

**v.**                                                                                                                            **Case No. 1:24-cv-01224-STA-jay**

**THE CARDIOVASCULAR CLINIC
OF WEST TENNESSEE, P.C. and
ADEYINKA AGBETOYIN, M.D.,**

    **Defendants.**

---

### ORDER PARTIALLY GRANTING AND PARTIALLY DENYING DEFENDANTS' FIRST MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Ashden Newell filed this action against The Cardiovascular Clinic of West Tennessee, P.C. ("CCWT") and Adeyinka Agbetoyin, M.D., for their alleged failure to comply with the Providing Urgent Maternal Protections Act ("PUMP Act") as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 218d(a)(1). She also brings a claim of retaliation in violation of the FLSA, 29 U.S.C. § 215. Defendants have filed a motion for summary judgment (ECF No. 24), and Plaintiff has filed a cross motion for partial summary judgment. (ECF No. 49.) Defendants also filed a second motion for summary judgment on the issue of after-acquired evidence. (ECF No. 50.) Plaintiff has responded to Defendants' motions (ECF Nos. 41, 60), and Defendants have responded to Plaintiff's motion. (ECF No. 61.) The parties have each filed a reply to the respective responses. (ECF Nos. 62, 63, 65.) For the reasons set forth below, Defendants' first motion for summary judgment is **PARTIALLY GRANTED** and **PARTIALLY DENIED**; Defendants'

second motion for summary judgment is **DENIED**; and Plaintiff's motion for summary judgment is **DENIED**.

## Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review all the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court "may not make credibility determinations or weigh the evidence." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

When the motion is supported by documentary proof such as depositions and affidavits, the non-moving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014). These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the non-moving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Statement of Undisputed Material Facts

Pursuant to the Local Rules of this Court, the parties have prepared statements of material facts "to assist the Court in ascertaining whether there are any material facts in dispute." Local Rule 56.1(a). Each party has responded to the movant's statement and has submitted statements of additional facts. These additional facts have been responded to.

A fact is material if it "might affect the outcome of the lawsuit under the governing substantive law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994), and *Anderson,* 477 U.S. at 247–48). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite to particular parts of the materials in the record and show that the materials fail to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1). The non-moving party must respond to the movant's statement of fact "by either (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed." Local Rule 56.1(b). Additionally, the non-movant may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

If the non-movant asserts that a genuine dispute of material fact exists, it must support its contention with a "specific citation to the record." Local Rule 56.1(b). If a party fails to demonstrate that a fact is disputed or fails to address the opposing party's statement of facts properly, the Court will "consider the fact undisputed for purposes" of ruling on the motion. Fed. R. Civ. P. 56(e)(2); *see also* Local Rule 56.1(d) ("Failure to respond to a moving party's statement

3

of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment."). Under Rule 56 of the Federal Rules of Civil Procedure, the Court "need consider only the cited materials" but has discretion to "consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In the present case, both parties object to certain portions of the opposing party's statement of facts. They both claim that various affidavits presented by their opponents are not based on first-hand knowledge and that the cited portions of the record do not accurately support that particular fact. Defendants also object to any consideration by the Court of the transcript of Plaintiff's recording of the May 23, 2024 meeting as inadmissible hearsay.

This Court confronted similar arguments in *Bland v. Carlstar Grp., LLC*, 2018 WL 1787892 (W.D. Tenn. Apr. 13, 2018), and determined that:

> Defendant is correct that Plaintiff's response to its statement of facts is replete with improper argument. As this Court stated in a previous case, "Argument in responses to statements of material facts clouds issues." *Maverick Grp. Mktg., Inc. v. Worx Envtl. Products, Inc.*, 99 F. Supp. 3d 822, 827 (W.D. Tenn. 2015). However, despite Plaintiff's "clouding of the issues" by inserting argument and unsupported inferences in his response to Defendant's statement of facts, the Court is able to discern factually based disputes and whether those disputed are material and will make its decision accordingly. To the extent that Plaintiff has presented any facts in his response that are not material or relevant to the issues presented by Defendant's motion, the Court will disregard those facts except as necessary to provide context or background. *C.f. Hillman v. Shelby Cty.*, 2012 WL 681778, at *1 (W.D. Tenn. Feb. 29, 2012) ("[C]ourts in the Western District of Tennessee do not strike inadmissible portions of affidavits; instead, they disregard the inadmissible testimony in their evaluation of the summary judgment motion before them.") The Court will do likewise with Defendant's responses to Plaintiff's statement of additional facts since Defendant also has failed to comply with the requirements of Local Rule 56.1 by including argument and extraneous material in its responses.

*Bland*, 2018 WL 1787892, at *2. Similarly, in the present case, the Court will disregard any inadmissible evidence in making its decision. The parties may renew any pertinent objections at

4

trial.[1] The Court finds that there is no genuine dispute as to the following facts unless otherwise noted.

Defendant CCWT is a for-profit, professional corporation formed and organized under Tennessee state law and currently conducting business as a clinic for the treatment of cardia and vascular conditions. It is located at 2968 North Highland Avenue, Jackson, Tennessee 38305. CCWT is a small cardiology clinic. Defendant Dr. Adeyinka Agbetoyin is the owner of CCWT and its only physician. During the time period at issue in this lawsuit, CCWT had seventeen full and part-time employees.

Plaintiff Ashden Newell was a sonographer/vascular technologist at CCWT from May 2023 until May 2024.  Defendants hired Plaintiff on May 1, 2023. Plaintiff informed Defendants that she was pregnant on or around May 18, 2023; she learned that she was pregnant shortly before informing Defendants.

During any given workday, Plaintiff was responsible for performing scans, contacting patients, speaking with providers, and other work-related job duties. Plaintiff admits that some of her ultrasound reports were late. Plaintiff had to wait until the computer was available before inputting reports.  Plaintiff does not know if she took "a longer time to perform ultrasounds than the other technologist."

Any alleged performance issues or deficiencies that Defendants allege existed during Plaintiff's pregnancy were never discussed with Plaintiff during or prior to her pregnancy. Abby

---

[1] The parties also state that some facts are disputed only for the purpose of the Court's deciding the motion for summary judgment. At other times, a party has noted that a particular statement does not contain material facts that must be decided to resolve any substantive claim or defense at issue but that the statement is undisputed for purposes of ruling on the parties' competing motions for summary judgment.  All facts are stated for the purpose of deciding these motions only.

Agbetoyin, who is CCWT's officer manager and is responsible for handling performance evaluations, never performed a written evaluation of Plaintiff's performance.

Defendants allowed Plaintiff unpaid maternity leave even though CCWT was not subject to the Family Medical Leave Act and even though Plaintiff had only been working there eight months. Plaintiff began her maternity leave after working Friday, January 12, 2024. Plaintiff's baby was born on January 15, 2024.

Plaintiff sent a text message to Mrs. Agbetoyin in late March to notify her that she would like to return to work the second week of April. In the text message Plaintiff stated, "I think as long as I get to pump around 9:00 and 3:00 and get my lunch relatively on time, that'll work well." Mrs. Agbetoyin did not respond to the text.

While Plaintiff was on maternity leave, Jenna Vance was hired by Defendants to work as a sonographer. Plaintiff sent a text message to Vance stating, "I will need to pump at 9am and 3pm every day (give or take maybe 20 mins on each side) and I'll have to get lunch relatively on time for that reason as well."

Dr. Agbetoyin texted Plaintiff on April 4, 2024, explaining that Defendants would need to meet with her before she resumed work. In that same text message, Dr. Agbetoyin also told Plaintiff that it would no longer be acceptable for her to take ninety minutes to do an ultrasound when the other technologist completed them in under an hour.[2]

Prior to returning from maternity leave, Plaintiff confided to a co-worker, Morgan Diebold, in a text message that "You realize they are trying to boot me out the door and disguise the discrimination (cuz I texted Abby . . . without any acknowledgment last week, about times needed for pumping) by saying I'm incompetent."

---

[2] Plaintiff disputes that she actually did take longer than the other technicians.

Before returning from maternity leave, Plaintiff felt as if her job was possibly in jeopardy. Plaintiff based her feeling partly on the text message that she had received from Dr. Agbetoyin prior to returning from her maternity leave.

During the meeting with Defendants to discuss Plaintiff's return to work, Defendants communicated that they would provide accommodations to Plaintiff so that she could pump breast milk at work three times a day. Plaintiff's timecards reveal that Defendants provided Plaintiff with thrice daily pump breaks except on limited occasions; however, the breaks were not always at the specific times requested by Plaintiff. Defendants also provided Plaintiff with a private office in which to pump.

According to the timecard records, Plaintiff was late to work every day after her return from maternity leave.

Some of the written reports required for the procedures that Plaintiff was performing were turned in late, and some of the written ultrasound reports were never completed by Plaintiff after her return from maternity leave.  The computer to complete reports was in Vance's exam room, and Plaintiff had to wait until the computer was available and a patient was not in the room to complete her reports. There was only one computer for both Plaintiff and Vance to share.  If Vance was in her sonogram room with a patient or if she was using the computer to complete her own reports, Plaintiff could not complete her reports. Plaintiff raised this issue with Dr. Agbetoyin, but the software to complete the reports was never installed on a second computer. Defendants deny that a second computer was needed.

7

On May 9, 2024, about three weeks after Plaintiff's return to work, Dr. Agbetoyin texted Plaintiff concerning her failure to turn in reports from the May 7th ultrasound procedures. Plaintiff admitted, "I'm a few days behind on that. I'll get to it all as soon as I'm able."

On May 20, 2024, Dr. Agbetoyin sent a message to Plaintiff that she had only done two procedures on May 16th and had not entered any data on that date in spite of the limited number of procedures. The text message from Dr. Agbetoyin to Plaintiff states, "May 16th, 2 studies, done by you all day, that I can see. No data entered into sonosoft in spite of this."

Canceling patients or blocking the schedule (and not delays in written reporting) could lead to a violation of the Medicare Multiple Procedure Payment Rule, but Dr. Agbeotyin is not aware of this actually happening.

Only trained sonographer/vascular ultrasound technologists can perform the ultrasounds and produce the required written reports that accompany the procedures. Unlicensed co-workers could not fill in for Plaintiff when she fell behind in her work.

Written ultrasound reports are critical to patient care, and, without them, insurance companies and Medicare cannot be billed by CCWT.  CCWT needs an ultrasound technologist who can perform timely procedures, who can turn in timely written reports, who can take care of very ill patients, who arrive to work on time, and who do not cause chaos in the workplace.

Plaintiff was paid on an hourly basis. Before her maternity leave, Plaintiff was provided with a one-hour, unpaid lunch break around noon. Plaintiff clocked out for her pump breaks. During Plaintiff's noon/mid-day break, Plaintiff took her lunch break and pumped.

Plaintiff told coworkers Jenna Vance and Morgan Diebold that she had contacted a lawyer regarding Defendants' failure to give her adequate break time to pump breast milk.

On May 22, 2024, Dr. Agbetoyin sent a text message to Plaintiff, Mrs. Agbetoyin, Jenna Vance, and Lakeshia Yarbrough stating,

> We are going to be discussing an issue with ultrasound scheduling, which has been brought to our attention by Patients who have complaint [sic] to front desk period it appears to be regarding frequent breaks been [sic] taken by ashden. Leading to. Long wait times or cancelation or disproportionate, walk [sic] load on Jenna. Which is affecting pts And other staff members. Once I get the message, we will make time to discuss further.

Plaintiff met with Dr. Agbetoyin and Mrs. Agbetoyin on May 23, 2024. Dr. Agbetoyin intended to discuss Plaintiff's performance issues at the meeting; he had no plans to terminate her employment. Instead, he made that decision at the end of the meeting.

During the meeting, Plaintiff complained that she was not getting adequate time for her pump breaks, among other things.

Toward the end of the meeting, Dr. Agbetoyin stated, "[S]ay whatever you want, get a lawyer, we'll go with that. Do work like we tell you to do or get out…You're fired. F**k off. Get out."

<u>After-Acquired Evidence</u>

The day after Plaintiff returned from maternity leave, she began taking photographs of ultrasound schedules. The photographs show a computer screen with an open scheduling application displaying a calendar program and the department's schedule. Plaintiff took these photographs with her cell phone. The date that Plaintiff took the photographs is indicated on the bottom of the photograph. Any patient names on the photographs have been redacted. Plaintiff started taking photographs of her schedule as proof that there were not sufficient break times in her schedule set aside for her to pump breast milk.

9

Lakeshia Yarbrough was a former nurse practitioner who had some lower-level management responsibilities. She did not have the authority to hire or fire. Yarbrough became aware of a potential HIPAA violation prior to the May 23, 2024 meeting.

Dr. Agbetoyin had "some inkling" going into the May 23rd meeting that there was a HIPAA issue, but he was not aware of the specifics. When the issue regarding the potential HIPAA violation was brought to Dr. Agbetoyin's attention, he asked someone to put it in writing; although he did not receive a "writeup about it," the issue of the photos and a potential HIPAA concern were on a list to be discussed with Plaintiff on May 23, 2024. Dr. Agbetoyin testified that the issue of Plaintiff's potential HIPAA violation was "mentioned to me once," "[i]t was one time I tried to bring up on our meeting, but instead we never got around to it because things took a turn south, leading to her termination." The photos and/or the alleged HIPAA violation were not discussed during the May 23, 2024 meeting. The potential HIPAA violation was brought to Dr. Agbetoyin's attention more fully after Plaintiff was terminated.

CCWT's "Notice of Privacy Rights" does not permit its employees to take photographs of a patient's name on an ultrasound schedule with that employee's cell phone when the photograph is not to be used for any work-related reason. However, under 45 C.F.R. § 164.502(j)(1), a workforce member (employee) can disclose HIPAA-protected information to an attorney retained by or on behalf of the workforce member for the purpose of determining the legal options regarding conduct the employee believes is unlawful, i.e. "disclosures by whistleblowers."

Analysis

The PUMP Act mandates that employers provide, among other things, "a reasonable break time for an employee to express breast milk for such employee's nursing child for 1 year after the child's birth each time such employee has need to express the milk." 29 U.S.C. § 218d(a)(1).

10

Defendants argue that Plaintiff's PUMP Act claim fails because it provided Plaintiff with "reasonable" break times. Defendants also argue that they are entitled to a "small business" exception. Plaintiff counters that she was not provided with the break times she needed and that her employment was terminated after she complained of the lack of timely breaks and mentioned hiring a lawyer.

The PUMP Act, 29 U.S.C. §218d, was previously found at 29 U.S.C. §207(r). *See, e.g., Childers v. Casey Cnty. Sch. Dist. Bd. of Educ.*, 2023 WL 4629555, at *4 (W.D. Ky. July 19, 2023), *aff'd*, 2024 WL 3623527 n.7 (6th Cir. Aug. 1, 2024) ("The parties reference Section 207(r) of the Fair Labor Standards Act requiring employers to provide a reasonable break time and location, other than a bathroom, for an employee to express milk. Congress has since stricken Subsection (r) from Section 207 and has incorporated its provisions into a new statute concerning breastfeeding accommodations in the workplace. *See* 29 U.S.C. § 218d(a)." (citations omitted). Because the applicable breast-feeding provisions in §218d are substantially the same as the provisions in §207(r), Defendants have cited law applicable to both of these provisions, and Plaintiff has not indicated any objection. In addition, as the retaliation provisions of the FLSA are interpreted in accordance with Title VII case law, Defendants cite Title VII case law regarding the failure to accommodate claim. *See, e.g., Mansfield v. City of Murfreesboro*, 706 F. App'x 231, 235 (6th Cir. 2017).

It is undisputed that Plaintiff was given the requisite private area in which to pump and that she was given break times during the morning, afternoon, and at lunch in which to pump. The issue for the Court is whether it was reasonable under the PUMP Act for Defendants to provide approximate times for pumping as opposed to Plaintiff's demand for specific times. The Court

11

finds that Defendants' actions were reasonable under the PUMP Act and that Defendants are entitled to summary judgment on this issue.

Although Plaintiff claims that she requested specific times to pump, i.e., 9 a.m., noon, and 3 p.m., and that Defendants granted her request, her text messages indicate otherwise. As noted above, Plaintiff texted Mrs. Agbetoyin on March 29, 2024, that "I think as long as I get to pump **around** 9:00 and 3:00 and get my lunch relatively on time, that'll work well." (emphasis added). Plaintiff also texted that "I will need to pump at 9am and 3pm every day **(give or take maybe 20 mins on each side)** and I'll have to get lunch **relatively on time** for that reason as well." (emphases added). The timecards submitted by the parties show that Plaintiff did, in fact, receive pumping breaks as requested although not necessarily at the exact times that Plaintiff now claims she needed. (Exhibit J, ECF No. 24-3.) Because Defendants provided Plaintiff with break times in which to pump that aligned with her stated pre-return to work requests and a private place in which to do so, Plaintiff's PUMP Act claim fails. *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68-69 (1986) ("[A]ny reasonable accommodation by the employer is sufficient to meet its accommodation obligation.")

Plaintiff also brings a claim under the FLSA's retaliation provisions, which make it unlawful for an employer "to discharge or in any other manner discriminate against" an employee or a former employee "because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." *See* 29 U.S.C. § 215(a); *see also Walsh v. Z4 Fuels, LLC*, 2022 WL 18587116, at *1 (E.D. Ky. Apr. 8, 2022) (stating that § 215(a)(3) specifically prohibits retaliatory action against employees who file complaints, pursue actions, or participate in proceedings under the FLSA).

Absent direct evidence of discrimination, FLSA retaliation claims are subject to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See*, *e.g.*, *Spiteri v. AT & T Holdings, Inc.*, 40 F. Supp. 3d 869, 874–75 (E.D. Mich. 2014) (citing *Adair v. Charter County of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006)).  In the present case, Plaintiff has pointed to no direct evidence of retaliation. Therefore, the Court will look to the burden-shifting framework. A plaintiff must show four elements to establish a prima facie case of retaliation under § 215: (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to him or her; and (4) there was a causal connection between the protected activity and the adverse employment action. *Caudle v. Hard Drive Express, Inc.*, 91 F.4th 1233, 1237-38 (6th Cir. 2024). "Under the *McDonnell Douglas* framework, …if the plaintiff establishes a prima facie case, 'the burden then shifts to the defendant to set forth a legitimate, non-discriminatory reason for the adverse employment action.' The plaintiff must then prove the defendant's proffered reasons were pretextual." *Id.* at 1238.

As for the first factor, whether Plaintiff engaged in activity protected under the FLSA and known by the employer, it is undisputed that Plaintiff asked for breaks for pumping under the PUMP Act and then complained when she did not get the breaks at the times she thought she should. Thus, the Court finds, as a matter of law, that it is undisputed that Plaintiff engaged in protected activity under the FLSA that was known to Defendants.  The Court also finds that Defendants took an adverse action against Plaintiff by terminating her employment.

Next, looking at evidence of a causal connection between the protected conduct and the adverse action, a "plaintiff must produce enough evidence of a retaliatory motive such that a reasonable juror could conclude that the [adverse employment action] would not have occurred

13

but for his engagement in protected activity." *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 209 (6th Cir. 2010). The Sixth Circuit has recognized that, in some cases, temporal proximity between the protected activity and the adverse employment action may be sufficient to establish a causal connection in a retaliation case. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523–26 (6th Cir. 2008).[3] When "an adverse employment action occurs very close in time after an employer learns of a protected activity," temporal proximity alone may satisfy the causal prong of a plaintiff's prima facie retaliation case. *Id.* at 523–25. In those "limited" and "rare" cases, a causal connection between the two actions can be inferred without other evidence of retaliation. *Id.* The present case appears to be one of those rare cases. It is undisputed that Dr. Agbetoyin had no intention of terminating Plaintiff's employment prior to the meeting despite knowing of her alleged poor job performance. During the meeting, after Plaintiff complained of not being able to take timely pump breaks and after mentioning her attorney, she was fired. Thus, Plaintiff has pointed to sufficient evidence "to raise an inference that her protected activity was the likely reason for the adverse action." *See Pettit*, 429 F. App'x at 533 (stating that, to establish a causal link in a retaliation case, a plaintiff is required to proffer evidence sufficient "to raise an inference that her protected activity was the likely reason for the adverse action.").

Defendants contend that Plaintiff's poor job performance caused her termination, and it is undisputed that Plaintiff was late to work every day after her return from maternity leave. However, it is disputed as to whether her tardiness was a sufficient reason for her termination. The quality of her work performance is also disputed. Defendants contend that she did not perform ultrasound procedures in a timely manner and did not submit her reports timely. Plaintiff points to

---

[3] *But see Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 F. App'x 524, 533 (6th Cir. 2011); *Spengler v. Worthington Cylinders*, 615 F.3d 481, 494 (6th Cir. 2010) (finding that temporal proximity alone is insufficient to establish a causal connection for a retaliation claim).

14

evidence in the record that the Clinic had only one computer that was often in use either by the other technician or was occupied by a patient when she needed to complete a report. Moreover, there is no evidence that Plaintiff was subjected to any kind of progressive discipline. *See, e.g.*, *Walton v. Dana Light Axle Mfg.*, 2025 WL 1218038, at *7 (N.D. Ohio Mar. 31, 2025) ("The record supports that Dana disciplined Walton in accordance with its progressive discipline policy and that this process resulted in Walton's termination.")

There are also questions of fact as to whether Plaintiff was "stirring up chaos" in the workplace and, if so, was this grounds for her termination. Defendants have presented evidence that Plaintiff's co-worker "Mandy" complained that Plaintiff had stated that she was recording her co-workers and intended to file a lawsuit. Plaintiff acknowledges that she told her co-workers, Jenna Vance and Morgan Diebold, that she had contacted a lawyer regarding Defendants' failure to give her adequate break time to pump breastmilk; she denies telling anyone that she was "recording work conversations for her lawyer." A jury could find that Plaintiff's sharing her concerns about her alleged lack of timely pump breaks with her co-workers did not equate to "creating chaos" in the workplace. Thus, the Court finds that Plaintiff has established a prima facie case of retaliation.

As previously stated, under the *McDonnell Douglas* framework, if the plaintiff establishes a prima facie case, the burden then shifts to the defendant to set forth a legitimate, non-discriminatory reason for the adverse employment action. "If the defendant carries this burden, the plaintiff then must prove by a preponderance of the evidence that the defendant's proffered reasons were not its true reasons, but merely a pretext for illegal discrimination." *Adair*, 452 F.3d at 489 (citing *McDonnell Douglas*, 411 U.S. at 802). In this case, Defendants' stated non-discriminatory reason was Plaintiff's alleged poor performance and the "chaos" that she caused in the workplace.

15

Once the defendant provides a legitimate, non-discriminatory reason for an adverse action, "the plaintiff then must prove by a preponderance of the evidence that the defendant's proffered reasons were not its true reasons, but merely a pretext for illegal discrimination." *Adair*, 452 F.3d at 489. The plaintiff may meet this burden by showing "(1) the proffered reason had no factual basis, (2) the proffered reason did not actually motivate [the defendant's] action, or (3) the proffered reason was insufficient to motivate the action." *Id.* (citing *Cicero v. Borg–Warner Auto., Inc.*, 280 F.3d 579, 589 (6th Cir. 2002)).

Although "temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual," *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001), in the present case, a jury could find as evidence of pretext the fact that Dr. Abbetoyin intended to discuss Plaintiff's performance issues at the meeting and had no plans to terminate her employment. Instead, he made that decision at the end of the meeting only after Plaintiff mentioned her pump break complaints and contacting an attorney about those complaints. Notably, Dr. Agbetoyin responded to her complaints with "say whatever you want, get a lawyer, we'll go with that. Do work like we tell you to do or get out…You're fired. F**k off. Get out." Because there are disputed issues of fact as to the reason that Plaintiff was fired and whether Defendants' stated reason was pretextual, summary judgment must be denied on Plaintiff's retaliation claim.

As for Defendants' after-acquired evidence defense,[4] Defendants ask the Court to limit Plaintiff's remedies if the Court denies its motion for summary judgment on the merits. Defendants claim that Plaintiff's photocopying to her own personal phone confidential patient documents in violation of both CCWT's policies and procedures and HIPAA would have ultimately led to her

---

[4] Defendants' motion for partial summary judgment (ECF No. 50) concerns this defense.

16

termination. According to Defendants, they only obtained the information necessary to fire Plaintiff the day after her termination when Dr. Agbetoyin more fully investigated an employee's report that Plaintiff had taken photographs of patient records for her own personal use. Defendants state that their policy is to terminate employees when a violation of HIPAA is willful and personally motivated.

The after-acquired evidence defense holds that, even if a plaintiff's termination was wrongful, if the plaintiff would have been terminated shortly afterward in any event, her remedies must be limited accordingly. *See Jones v. Nissan N. Am., Inc.*, 438 F. App'x 388, 415 (6th Cir. 2011) ("If the [after-acquired evidence] defense applies, it generally bars the employee from obtaining front pay and reinstatement, and limits backpay." (citing *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1168 (6th Cir. 1996)).[5] "When an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Romanini v. Atrium at Anna Maria, Inc.*, 2019 WL 2330580, at *2 (N.D. Ohio May 31, 2019) (citation omitted).

In the present case, the Court assumes without deciding that Plaintiff's photographing the records would have ultimately led to her termination.[6] However, Defendants cannot claim that they obtained knowledge of her actions only <u>after</u> her termination because Dr. Agbetoyin

---

[5] The parties disagree as to whether this defense is available in a PUMP Act retaliation case. *See Ryan v. City of Spring Hill, Tennessee*, 2025 WL 2302264, at *5 (M.D. Tenn. Aug. 7, 2025) ("And while the Supreme Court and the Sixth Circuit have held that this defense is available for claims under Title VII and the ADEA, Spring Hill does not present any case law confirming its availability for claims under the FLSA.") Because of its decision denying Defendants' motion for summary judgment on this defense, the Court need not decide whether the defense is actually available to Defendants.

[6] Plaintiff has claimed a "whistleblower" exception under the regulation found at 45 C.F.R. 164.502(j)(1).

17

acknowledges that he knew that Plaintiff had potentially violated HIPPA prior to her termination. He asked that someone "write-up" her actions. He even intended to bring the matter up at the May 23 meeting. Thus, he was on notice of her actions and could have used this as a ground for termination on May 23 but did not do so. Bolstering this finding is that Lakeshia Yarbrough, who had some lower-level management responsibilities, also became aware of a potential HIPAA violation prior to the May 23, 2024 meeting.

As pointed out by Plaintiff, the after-acquired evidence defense is premised on the employer's learning of some sort of wrongdoing <u>after the fact</u> that would have necessitated terminating the employee had the information been known beforehand. The Court agrees with Plaintiff that Defendants have failed to establish that they were not aware of Plaintiff's alleged wrongdoing before Plaintiff's termination at the May 23 meeting. To the contrary, the evidence shows that Defendants were, in fact, aware of the photographing, even if a complete investigation had not occurred. Accordingly, Defendants' motion for summary judgment on the issue of after-acquired evidence is denied, and Defendants will not be allowed to rely on this defense at trial to limit Plaintiff's damages.

In summary, Defendants' first motion for summary judgment (ECF No. 24) is **PARTIALLY GRANTED** and **PARTIALLY DENIED**. The motion is granted as to Plaintiff's claim that Defendants failed to provide her with a reasonable accommodation under the PUMP Act. The motion is denied as to her claim that she was retaliated against when she asserted her rights under the FLSA/PUMP Act. Plaintiff's cross-motion for partial summary judgment (ECF No. 49) is **DENIED**. Defendants' motion for summary judgment on the issue of after-acquired evidence is **DENIED**.

The matter will proceed to trial on Plaintiff's retaliation claim.

**IT IS SO ORDERED.**

                                                **s/ S. Thomas Anderson**
                                                S. THOMAS ANDERSON
                                                UNITED STATES DISTRICT JUDGE

                                                Date:  November 17, 2025.